**Tagged Opinion**



ORDERED in the Southern District of Florida on July 19, 2012.

_____
**Laurel M. Isicoff, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                                   Case No. 11-23183-BKC-LMI

IRAIN LAZARO GONZALEZ,                              Chapter 13

       Debtor.
_____/

**ORDER ON THRESHOLD LEGAL ISSUE
ON DEBTOR'S MOTION TO HOLD STATE OF FLORIDA IN CONTEMPT**

     This matter came before the Court for hearing on June 26, 2012 at 10:00 am on Debtor's Renewed Motion to Hold State of Florida – Child Support Enforcement in Contempt (ECF #64) and the State of Florida, Department of Revenue's Amended Motion for Summary Judgment (ECF #82). The Court heard argument solely on the threshold legal issue of whether the State of Florida Department of Revenue (the "DOR") could be held in contempt for violating the Order Confirming Chapter 13 Plan, as modified (ECF #52) (the "Confirmation Order") for intercepting

the Debtor's expense reimbursement check, even if the interception was not a violation of the automatic stay. For the reasons set forth below, this Court finds that the DOR can be held in contempt for violation of the Confirmation Order whether or not the interception constituted a stay violation,[1] and, as set forth below, schedules this matter for further evidentiary hearing on the damages portion of the Debtor's Motion.

## FACTS

The Debtor filed for protection under chapter 13 of the Bankruptcy Code on May 13, 2011. The Confirmation Order was entered on October 20, 2011, and was modified on November 29, 2011. The Debtor's First Amended Plan (ECF #50) (the "Plan") includes payment of the Debtor's ongoing child support obligations as well as payments to cure a $2,400 child support arrearage.

On April 14, 2012 the Debtor filed his Emergency Motion to Hold State of Florida – Child Support Enforcement in Contempt of Court for Violation of Order Confirming Plan (ECF #57) (the "Emergency Motion"). The Debtor is an employee of the federal government. The Debtor alleged that the DOR caused the Department of Treasury to withhold a travel reimbursement check of $4,716.72, which the Debtor needed to pay his government charge card.[2] The Debtor also alleged that he could not pay the credit card bill (which was used for travel expenses covered by the reimbursement check) without the reimbursement and that, if he did not pay the credit card bill, he would be suspended without pay for fourteen days and be subject to review by "internal affairs." The Emergency Motion further alleged that the intercept

---

[1] The parties have agreed, for purposes of this order, that whether or not the intercept was a stay violation is not relevant.
[2] Under Fla. Stat. §61.1301 the DOR has the right to collect child support on behalf of the minor. The DOR further asserts and it is undisputed, that Fla. Stat. §61.1301, Fla. Stat. §61.046, and §Fla. Stat. 61.17 together give the DOR authority to cause the Department of Treasury to withhold the Debtor's travel reimbursement check as a source of income from which to pay the Debtor's domestic support obligations.

was the second time the DOR caused the Department of Treasury to withhold a reimbursement check (Debtor's counsel apparently brought the first withholding to the attention of counsel for the DOR) and that the DOR, in the past, also caused the freezing of the Debtor's and the Debtor's mother's bank account, which freeze was released after another phone call to counsel for the DOR.

At the hearing on the Emergency Motion the DOR disputed that it had done anything wrong in causing the reimbursement check to be withheld in order to pay the child support arrearage, but agreed to direct return of the funds and to make sure no further action was taken on behalf of the State of Florida by the Department of Treasury. The Court entered a preliminary order on the Emergency Motion, directing release of the monies and reserving ruling on the issue of sanctions and attorney fees (ECF #59). The DOR filed its first motion for summary judgment (ECF #60), and, after the Debtor filed a renewed motion for contempt and sanctions (ECF #64) and the first motion for summary judgment was partially stricken for procedural reasons (ECF #70), the DOR filed an amended motion for summary judgment (ECF #82).

The issue before the Court is whether, even if the withholding of the reimbursement check was not subject to the automatic stay, the act violated the Confirmation Order, therefore subjecting the DOR to possible sanctions including attorney fees. The DOR argues that, pursuant to 11 U.S.C. §362(b)(2)(C),[3] any action to collect a child support arrearage that is not otherwise stayed by a bankruptcy may continue notwithstanding that the debtor/obligor may have confirmed a bankruptcy plan that provides for payment of that arrearage, unless the bankruptcy plan affirmatively enjoins the collection activity. The Debtor counters that if every

---

[3] "The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay… with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute…."

3

creditor whose collection actions are not subject to the stay was able to proceed with collection even after the bankruptcy plan was confirmed, the orderly repayment of creditors contemplated by the plan, and a debtor's fresh start, would be threatened, if not completely derailed.

The Debtor relies on 11 U.S.C. §1327(a) which provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." The Debtor argues that the "manifest weight of the case law" including the Eleventh Circuit's opinion in *In re Rodriguez*, 367 Fed. Appx. 25, 2010 WL 597224 (11th Cir. 2010) ("*Rodriguez*") holds that even an action that is not stayed by section 362 nonetheless may not be exercised contrary to the provisions of a confirmed plan. The DOR counters that (a) *Rodriguez* is not controlling, (b) that to rule that section 1327 overrides section 362 is contrary to Congressional intent, and (c) that there is no private right of action for a violation of section 1327. Because this Court finds that *Rodriguez*, while not controlling, is persuasive,[4] and that its reasoning has not been impacted by the enactment of BAPCPA[5] and the 2005 changes to section 362, the Court finds that the DOR can be sanctioned for violation of the Confirmation Order.

In *Rodriguez,* the bankruptcy court sanctioned the DOR because it continued to serve dunning and collection letters to get payment for child support even though the debtor had modified his chapter 13 plan to reduce the monthly amount of support. The bankruptcy court held that the DOR's actions violated the automatic stay and the confirmation order. The district court affirmed the bankruptcy court, holding that, although the DOR had not violated the automatic stay, by seeking to collect child support in an amount in excess of that required by the

---

[4] 11th Cir. R. 36-2 states that "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."
[5] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

4

bankruptcy plan, the DOR had violated the confirmation order, and, accordingly the bankruptcy court's award of sanctions in the form of penalties (excused by compliance by the DOR) and attorney fees to the debtor, was appropriate. *Rodriguez* at 26-7.

In its unpublished *Rodriguez* opinion the Eleventh Circuit affirmed the district court's ruling:

> As the district court held, §362 does not exist in a vacuum and must be read alongside various other portions of the Bankruptcy Code. Title 11 U.S.C. §1327 addresses the effects of the confirmation of a bankruptcy plan. . . . Under [11 U.S.C. §1327(a)], once a bankruptcy plan is confirmed, the debtor and each creditor is bound by its terms. Here, the State violated the confirmation order by asserting an interest other than those provided for in the plan after confirmation.

*Id.* at 28.

The DOR argues that this Court should not follow *Rodriguez* for two reasons. First, *Rodriguez* dealt with the DOR seeking to collect child support payments greater than the payments provided in the debtor's plan, whereas, in this case, there is no dispute as to the arrearage *amount*, just whether the *methodology* of collection could be modified by confirmation of the Debtor's Plan. Second, the DOR argues, Rodriguez is a pre-BAPCPA case,[6] and what constituted an act not stayed by a bankruptcy with respect to child support collection was different prior to BAPCPA's enactment. Before BAPCPA the limits of the DOR's enforcement powers post-confirmation under certain circumstances were ambiguous. The DOR argues that, post-BAPCPA, those limits no longer exist, and therefore the analysis underlying *In re Gellington*, 363 B.R. 497 (Bankr. N.D. Tex. 2007) ("*Gellington*"), the case upon which the Eleventh Circuit relied in *Rodriguez*, is no longer valid.

---

[6] The case was decided after enactment of BAPCPA but the law applicable to the decision was the pre-BAPCPA version of the Bankruptcy Code.

This Court cannot find anything in the language of section 1327(a) that differentiates methodology from amount. The issue for any court is whether the actions taken by a creditor are consistent with, or at odds with, the confirmed plan. In this instance, the decision of the DOR to allow the interception of the expense reimbursement as a method for payment of the arrearage[7] was contrary to the express provisions of the Debtor's Plan, which provides that the arrearage of $2,400 will be paid in full at the end of the first forty five months. Thus the Court finds the difference in the nature of the plan provision violated is not relevant to this decision.

The second argument raised by the DOR relates to the changes in section 362 made by BAPCPA. The DOR correctly argues that many changes were made to the Bankruptcy Code to protect holders of domestic support obligations,[8] especially with respect to the collection of past due and ongoing child support obligations. However, the changes in BAPCPA do not change the *Rodriguez* holding. The provision that was at issue in *Rodriguez* is section 362(b)(2)(B) which,

---

[7] It is not insignificant that the intercept was for more than double the outstanding arrearage. However, for purposes of this order that fact is not relevant.

[8] 11 U.S.C. §101(14A) defines "domestic support obligation" as a

> [D]ebt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
> **(A)** owed to or recoverable by--
> **(i)** a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> **(ii)** a governmental unit;
> **(B)** in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> **(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
> **(i)** a separation agreement, divorce decree, or property settlement agreement;
> **(ii)** an order of a court of record; or
> **(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> **(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

6

pre-BAPCPA, excepted from the automatic stay "the collection of alimony, maintenance, or support from property that is not property of the estate." As mentioned previously, there was a great deal of litigation prior to the enactment of BAPCPA regarding whether payments that were garnished, intercepted, or withheld constituted property of the estate, thereby creating an ambiguity about whether an action did or did not violate the stay.[9] The DOR argues that the added language to section 362(b)(2)[10] broadens the universe of permissive, unambiguous, collection activities and therefore the rules of statutory construction applied by the district court and the circuit court in *Rodriguez* no longer apply. The DOR is wrong.

    First, the holding in *Rodriguez* assumes the action that the DOR took was not stayed by section 362. The fact that the actions taken by the DOR in this case rely on an addition to section 362, and also might not be stayed[11] doesn't change the Eleventh Circuit's analysis or holding – even if an action taken by the DOR in connection with its enforcement obligations is not a violation of the automatic stay, it may, nonetheless, be a violation of a confirmation order. The second reason that the DOR's argument is flawed is found in the language of *Rodriguez* itself. The *Gellington* case, upon which the *Rodriguez* court relied, was decided after BAPCPA was

---

[9] The pre-BAPCPA section 362(b)(2) was ambiguous because, as the *Rodriguez* court reasoned:

> Prior to confirmation, a child support creditor is unable to attempt to collect child support from the debtor because, prior to confirmation, all property is the property of the bankruptcy estate and §362(b) allows for an exception for the stay only as to funds which are not part of the bankruptcy estate. Although §1327(b), which provides that following confirmation property revests with the debtor, allows a child support creditor to seek collection from the debtor, §1327(a) forbids collection of any debt not confirmed by the plan. The district court concluded, therefore, that the exception in §362(b) cannot coexist with the confirmation effects of §1327(a)… based on the statutory scheme, the §362(b)(2) exception "has little or no practical effect in Chapter 13 situations."

*Id*. at 28 (citations omitted).
[10] *See supra* note 1.
[11] As already mentioned, the Debtor has alleged that DOR's actions constituted a stay violation, but as this Court has already made clear, whether or not the DOR's actions violated the stay is not relevant to this decision. *See supra* note 6.

enacted and, indeed, the *Gellington* court found that, under BAPCPA, the Attorney General for the State of Texas apparently did not violate the automatic stay in pursuing child support payments after plan confirmation. Nonetheless, the *Gellington* court held that pursuant to section 1327, the plan bound the Attorney General and the debtor: "proceedings inconsistent or incompatible with the confirmed plan are improper." 363 B.R. at 502 (quoting *In re Murray* 350 B.R. 408, 418 (Bankr. S.D. Ohio 2006)).

Furthermore, the Eleventh Circuit's approval of the district court's finding that section 1327 and 362 are irreconcilable is not impacted by the changes to BAPCPA. The district court in *Rodriguez* concluded that although property of a debtor revests in the debtor after confirmation, and, in the absence of the plan would allow collections, (a) since 1994 the Bankruptcy Code has required that child support payments be included in the plan and (b) all creditors are bound by the plan. As the Eleventh Circuit noted in *Rodriguez*, it previously recognized in *Carver v. Carver*, 954 F.2d 1573, 1577 (11th Cir.1992) that "the §362(b)(2) exception 'has little or no practical effect in Chapter 13 situations.'" *Id*. at 28. Nothing in the BAPCPA amendments changes this analysis. The new section 362(b)(2)(C)[12] provides for the continuing ability of a child support creditor (now known as the holder of a domestic support obligation) to collect directly from the debtor during the entire bankruptcy case. However, section 1322(a) still requires that a chapter 13 plan must provide for payment of domestic support obligation arrearages as well as for payment of all ongoing child support obligations and section 1327(a) still binds all creditors to the terms of a chapter 13 plan.

Domestic support creditors and debtors are either bound by the terms of a chapter 13 plan or they are not. This Court agrees with *Rodriguez* that both domestic support creditors and

---

[12] And for that matter, the other provisions of section 362(b)(2) that allow for direct collection and intercept of estate assets.

debtors are bound by the terms of a chapter 13 plan according to the Bankruptcy Code. Although BAPCPA modified section 362(b) to provide greater protection to the collection of domestic support obligations, it did not change section 1327(a). Accordingly, so long as the Debtor is meeting his obligations under the Plan, the DOR may not take any action inconsistent with the Plan. Since the Plan provides that the arrearage will be paid by monthly payments of $88.89 starting on month nineteen and ending on month forty five, the DOR cannot take actions inconsistent with that provision.

The DOR further argues that to stop the DOR's collection activities, which are otherwise allowed to continue under section 362, the plan must contain a specific injunctive provision. This Court disagrees.  The Eleventh Circuit in *Rodriguez* held that the plan controls, and the Plan in this case sets forth how the obligations will be paid.[13]

Accordingly the Court holds the DOR in contempt for violating this Court's Confirmation Order. The Court further holds that the Debtor is entitled to reasonable attorney fees and costs; the Debtor is directed to prepare detailed time records and file them within 14 days of the date of this Order. The Debtor also asserts he is entitled to compensatory and punitive damages. If the Debtor choses to proceed with this claim the Debtor is directed to file, within 14 days of the date of this order, a schedule of the compensatory and punitive damages requested, including amounts, and identify any witnesses or evidence upon which the Debtor will rely in support of

---

[13] Nothing in this opinion is intended to suggest that, should the Debtor default, the DOR is precluded from protecting its clientele. The manner in which the DOR can assert its rights in the event of a plan default is not before this Court and so the Court will not analyze or critique different methodologies.  Nor is this Court downplaying the serious nature of a debtor's default in domestic support obligation payments.  There are methods for immediate protection should a debtor with domestic support obligations default; it is incumbent on the DOR to make sure those protections are built into the plan.  For example, a plan could provide that, should the debtor fail to make his or her domestic support obligation payment to the trustee, that within a certain amount of days after such a default, the DOR could immediately start alternative collection methods.

his claim. The amount of sanctions will be determined at an evidentiary hearing that will be scheduled by separate order.

### 

Copies furnished to:
James Schwitalla, Esq.
Frederick F. Rudzik, Esq.

*The Clerk of Court shall serve a copy of this order upon all parties in interest.*